UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
:
PETER REGA :
: CASE NO. 1:11-CV-1822
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. No. 44]
NATIONWIDE MUTUAL INSURANCE :
COMPANY, et al., :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this case, putative Class Representative Peter Rega sues his automobile insurer, Defendants Nationwide Mutual Insurance Company, Depositors Insurance Company, and Allied Property & Casualty Insurance Company (collectively, "Nationwide") for breach of contract and unjust enrichment. Rega has filed a motion to certify his claims against Nationwide as a class action. [Doc. 44.] Nationwide opposes the motion. [Doc. 46.]

The Court **DENIES** Rega's motion for class certification. First as a threshold matter, Rega is not a member of the proposed class because he sent a check to the wrong address and Nationwide received that check after the due date. Second, Rega's evidence fails the numerosity, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23.

**I. Background**

According to Rega, he has been a Nationwide automobile insurance customer since approximately June 1994. [Doc. 57 at 3.] Rega says he paid several of his monthly Nationwide

-1-

Case No. 1:11-CV-1822
Gwin, J.

bills—bills that were due on the 21st of each month—with payments from his Bank of America online account. [Doc. 44 at 4.] Rega says that Nationwide failed to properly credit his account for his November 2009 payment[1/] and as a result, charged him an improper late fee. [Doc. 57 at 2.]

*A. Bank of America and Fiserv Payment Processing*

Rega initiated certain 2009 payments on non-party Bank of America's "Bill Pay" website. [Doc. 57 at 9.] The Bill Pay website, however, is hosted by another non-party, Fiserv. [*Id.*] Fiserv not only manages Bank of America's Bill Pay website, it also processes the Bill Pay payments initiated by Bank of America customers. [*Id.*]

Generally, a Bank of America customer ("payor") initiates a Bill Pay payment by logging in to the website and entering a payee's ("biller") name, address, payment amount, account number, and date the payment is to be posted.[2/] [Doc. 41-2 at 89.] Next, Fiserv processes the Bill Pay payment and either (1) remits an electronic payment, (2) mails a corporate check, or (3) mails a personal check. [*Id.*] Fiserv "rules" govern whether a biller receives an electronic payment or a paper check. [Id. at 23.]

Specifically, Fiserv attempts to match the biller data entered by the payor with certain biller data in its own database. [Doc. 57 at 7.] The Fiserv biller data can include payor data like payor names and account numbers or biller data like biller names and addresses. [Doc. 41-2 at 15, 74.] If Fiserv is unable to match its own data with the data entered by the payor on the Bill Pay website, than Fiserv mails a paper check. [*Id.*]

---

[1/]In his motion for class certification filed on July 24, 2012, it is unclear whether Rega also argues that Nationwide erroneously charged him a late fee for his October 2009 payment. *See* [Doc. 44 at 17] (noting that Rega uses the phrase "to be received" and not "received on"). Nevertheless, in his brief opposing summary judgment filed on August 17, 2012, Rega abandons that potential argument. *See* [Doc. 57 at 2.]

[2/]It is not *always* necessary for a Bill Pay customer to enter a biller's information. *See* [Doc. 43-1 at 56.]

Case No. 1:11-CV-1822
Gwin, J.

*B. Nationwide Payment Processing*

Nationwide directs its customers to send payments to particular Nationwide "lockbox[es]." [Doc. 42 at 5.] As Nationwide describes them, "[t]hese lockboxes are financial institutions that are contractually authorized to receive, deposit, and process payments on behalf of designated companies within Nationwide." [*Id.*] Nationwide has different lockboxes depending on the specific company that issued the insurance policy and the geographic region where the insured resides. [*Id.*]

Upon receipt of a payment, Nationwide's lockbox agents have authority to input receipt of payment on the same day payment is received. [Doc. 44 at 4]. These lockbox agents use a "lookup" file to match the payments with Nationwide customer accounts. [*Id.* at 10.] If the lockbox agents are unable to match a payment with a member's account, a "default" occurs. [Doc. 41-1 at 6.]

Here, Rega incorrectly sent his November 2009 payment to Nationwide's lockbox in Charlotte, North Carolina. [Doc. 43-1 at 91-93.] He was supposed to send the payment to Nationwide's lockbox in Iowa. For defaults during 2009, the Charlotte lockbox sent default checks via overnight mail to a Nationwide facility in Canton, Ohio for further investigation and rerouting. [Doc. 42 at 6.] At the Canton facility, Nationwide employees rerouted the default payments to the correct location using customer account data for all·of Nationwide's companies. [Id.]

*C. Nationwide Transfers Rega's Policy to Depositors*

In 2009, Rega had been a Nationwide customer for fifteen years. [Doc. 57 at 3.] From June 1994 until March 2009, Rega had maintained his insurance policy with Nationwide Mutual Fire Insurance Company ("Nationwide Fire"). [*Id.* at 2-3.] Every six months in March and September, Nationwide Fire would send Rega a policy renewal invoice, which Rega paid. [Doc. 43-1 at 34.] But in early 2009, Nationwide Fire sent Rega a "Notice of Policy Transfer," informing him that it

Case No. 1:11-CV-1822
Gwin, J.

was transferring his policy to "Depositors Insurance Company . . . a Nationwide affiliated company." [Doc. 57 at 3.]

The policy transfer resulted in two significant changes for Rega. First, unbeknownst to Rega, the policy transfer caused Rega's payment "grace period" to change. [Doc. 47 at 4.] In 2009, Nationwide allowed its customers different grace periods depending on the insurance product and state. [*Id.*] If a customer's payment arrived after its due date but before the due date plus the applicable grace period, Nationwide would not charge a late fee. [Doc. 44 at 3.] Here in 2009, Depositors auto policy customers received an eight-day grace period: the due date plus seven days. [Doc. 57 at 4.] Second, Depositors had its own lockbox for receiving payments. *See, e.g.*, [Doc. 42 at 4.] Nationwide communicated the new lockbox address to Rega on his invoices. [*Id.*] Attached to the bottom of Rega's 2009 invoices were detachable payment coupons that requested Rega send his payments to "PO Box 10479 Des Moines, IA 50306-0479." *See, e.g.*, [Docs. 43-2; 43-3; 43-4; 43-5; 43-6.]

*D. Rega's 2009 Payments*

Rega had two six-month policies that became due in 2009. Rega paid his first policy—for March 21, 2009, to September 21, 2009—in full and on time. [Doc. 57 at 6.] There is no evidence before the Court that shows how Rega made this payment or where he sent his check.

For the second six-month policy—for September 21, 2009, to March 21, 2010—Rega elected to pay his balance in monthly installments. [Doc. 43-1 at 5.] Beginning in September 2009, however, the evidence shows that Rega used Bank of America Bill Pay to send his payments to a Nationwide lockbox in Charlotte, North Carolina—instead of the Des Moines, Iowa lockbox indicated on Rega's invoices. *See, e.g.*, [*Id.* at 91.] But in 2009, the Charlotte lockbox did not

Case No. 1:11-CV-1822
Gwin, J.

handle payments for Depositors, nor did it have Rega's account information. [Doc. 41-1 at 6.] Thus, the lockbox agents forwarded Rega's payments to Nationwide's Canton facility for further investigation and rerouting. *See, e.g.*, [Doc. 57 at 7.]

The rerouting of Rega's checks did not cause Nationwide to charge late fees for Rega's September and October 2009 payments. In September 2009, Nationwide did not charge Rega a late fee because the lockbox agents in Charlotte processed his payment on September 23, 2009, and Depositors received his payment in Iowa on September 28, 2009—one day *before* his due plus grace period. [Doc. 57 at 7.] In October 2009, Rega's check did not arrive in Charlotte until October 30, 2009, one day *after* Rega's due date plus grace period. [*Id.* at 7-8.] Thus, Nationwide charged Rega a $10 late fee for his October 2009 invoice.

The parties disagree, however, about the arrival date of Rega's November 2009 payment at the Charlotte lockbox. [Doc. 46 at 6; 57 at 2.] On November 4, 2009, Nationwide sent Rega a November invoice with a due date of November 21, 2009. [Doc. 57 at 9.] Thus, November 29, 2009, was Rega's due date plus grace period.

In response to the invoice, on November 20, 2009, Rega caused Fiserv to issue a paper check payment. [Doc. 57 at 9.] Nationwide's business record entries show that on November 30, 2009, the Charlotte lockbox processed Rega's check—one day *after* Rega's due date plus grace period. [Doc. 60 at 2.] Further, the records show that Rega's check was processed and rerouted by the Canton processing facility, and on December 4, 2009, Nationwide received Rega's payment in Des Moines. [Doc. 57 at 13.] As a result, Nationwide charged Rega a $10 late for his November 2009 payment. [*Id.*] Rega argues that his payment arrived in Charlotte before November 30, 2009, and Nationwide charged him the late fee in error. [Doc. 44 at 17.]

Case No. 1:11-CV-1822
Gwin, J.

Rega brings two causes of action against the Defendants (he also seeks declaratory judgment): (1) breach of contract and breach of the covenant of good faith and fair dealing; and (2) unjust enrichment.

Rega now moves to certify a class of

> All individuals who: (i) had an insurance policy with Nationwide Mutual Insurance Company (d/b/a Nationwide Insurance Company) Depositors Insurance Company or Allied Property & Casualty Company who (ii) made payments on their policies which were received prior to the date due, plus the grace period; (iii) who were subsequently charged a late fee during the applicable statute of limitations.

[Doc. 44 at 11.]

**II. Legal Standard**

A member of a class may sue, as a representative, on behalf of all class members only if the prerequisites of Rule 23(a) are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, "the court [must] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[3]

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must

---

[3] Federal Rules of Civil Procedure 23(b)(1) & (2), which provide two alternative bases for maintaining a class action, are not at issue here.

-6-

Case No. 1:11-CV-1822
Gwin, J.

affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and must be checked through "rigorous analysis," *Wal–Mart*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161).

Plaintiff Rega says that "the Court should accept the governing complaint's allegations as true." [Doc. 44 at 6.] But Rega is wrong. In fact, "some circuits expressly bar district courts from presuming that the plaintiffs' allegations in the complaint are 'true for purposes of the class motion . . . without resolving factual and legal issues that strongly influence the wisdom of class treatment.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (*quoting Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir.), *cert. denied*, 534 U.S. 951 (2001) (internal quotation marks omitted)*; see also Elizabeth M. v. Montenez*, 458 F.3d 779, 783 (8th Cir. 2006); *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.)*, 471 F.3d 24, 41 (2d Cir. 2006). In *Gooch*, the Court of Appeals for the Sixth Circuit endorsed the view that a district court may probe behind the pleadings to decide the certification question when it is necessary to resolve disputed factual and legal issues that impact the wisdom of class treatment. *See* 672 F.3d at 417.

### III. Analysis of whether Rega is member of the class

Here as a threshold matter, it is necessary to probe behind the pleadings[4] to determine if

---

[4] "[O]nly admissible evidence may be considered by the trial court in ruling on a motion . . . [h]owever, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect." *See Wiley v. United States*, 20 F.3d 222, 225 (6th Cir. 1994). On August 16, 2012, Rega filed a motion to strike paragraph 25 of Daniel Basye's July 23, 2012 affidavit. [Doc. 54.] The Court has not yet ruled on the motion, and thus chooses to ignore paragraph 25 here. The Court considers all other relevant evidence in the record.

Case No. 1:11-CV-1822
Gwin, J.

Plaintiff Rega is a member of the proposed class. This question speaks to the wisdom of class treatment. Thus Rega must show that Nationwide received his payment before the due date plus the grace period, yet charged him a late fee.

Instead, the evidence shows that the Charlotte lockbox received Rega's payment on November 30, 2009—one day *after* Rega's due date plus the applicable grace period. For Rega's November invoice, Rega's due date plus the grace period was November 29, 2009. *See* [Docs. 57 at 9; 47 at 5.] Rega caused Fiserv on November 20, 2009, to issue a paper check payment. [Doc. 57 at 9.] But Rega caused his check to be sent to the wrong lockbox in Charlotte, North Carolina, [doc. 41 at 13,] despite Nationwide payment coupons indicating that Rega should send his payments to its Des Moines lockbox. *See, e.g.*, [Docs. 43-2; 43-3; 43-4; 43-5; 43-6.]

As a result of Rega's error, the Charlotte lockbox could not match Rega's check to a Nationwide account. [Doc. 47 at 2.] Thus, the evidence shows that the lockbox agents forwarded Rega's check to Nationwide's Canton processing facility for further investigation and rerouting. [Doc. 57 at 9.] In Canton, the processing center matched Rega's payment to his Nationwide account and rerouted his payment to Des Moines. [Doc. 47 at 5-6.] Most importantly, Rega's payment was due November 29, 2009 but was not received by any Nationwide facility until November 30, 2009, when Rega's payment was received by the Charlotte lockbox. [Doc. 56-9.] On December 4, 2012, Nationwide received Rega's check in Des Moines. [Doc. 60 at 2.]

Independent of the spreadsheet, additional Nationwide business record entries show that on November 30, 2009, the Charlotte lockbox processed Rega's check. [Doc. 60 at 2.] Nationwide says the log entries in Rega's file show his payment was "PROCESSED BY NW LOCKBOX ON 11/30," and received in Des Moines "BY REMITTANCE PROCESSING ON 12/04." [*Id.*] Rega

-8-

Case No. 1:11-CV-1822
Gwin, J.

cites to these same logs for authority in his own filings with the Court. [Doc. 50 at 9.]

Nationwide also asserts that Rega "produced a copy of his returned November 2009 check, which has stamped across its back 'November 30, 2009' as the deposit date." [Docs. 60 at 4; 58-3.] Rega has not offered any explanation or record evidence to undermine Nationwide's assertion. And most importantly, Rega has not offered any evidence from the Charlotte lockbox provider, Wells Wachovia, that the lockbox received his payment before November 30, 2009.

Rega argues that a combination of circumstantial evidence plus Nationwide and Allied records could suggest that "November 30, 2009 represents the date the check arrived in Des Moines, after first being sent by the lockbox to Canton, Ohio for default processing." [Doc. 57 at 14.] But it is not enough for Rega to allege that mail delivery and remittance times are normally quicker. [*Id.*] His payment was likely in transit on weekends and during the Thanksgiving holiday on November 26, 2009.[5/] Likewise, Rega's attempt to attribute his own meaning to the Nationwide and Allied business records is unpersuasive in the face of Nationwide's record evidence. [Doc. 60 at 1-2.]

Moreover, Rega never explains why the limited ability to backdate payments in Depositors' "Flex" billing system, [doc. 57 at 14,] undermines the separate Nationwide log entries or the Canton processing center spreadsheet. Rega has not offered any evidence to suggest that the inability to backdate payments in the Flex billing system also applies to the Nationwide log entries or the Canton processing center's spreadsheet.

In the end, Rega has not shown that he made a payment to Nationwide before the due date plus the grace period and was subsequently charged a late payment. Thus because Rega has not

---

[5/]Under Federal Rule of Evidence 201, the Court takes judicial notice that November 21, 2009 is a Saturday; November 22, 2009 is a Sunday; November 28, 2009 is a Saturday; November 29, 2009 is a Sunday, and Thanksgiving fell on November 26, 2009.

-9-

Case No. 1:11-CV-1822
Gwin, J.

demonstrated he is a member of the proposed class, Rega is not a member of the class he seeks to certify. See *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Because Nationwide never charged Rega a late fee for a payment it received before the due date plus the grace period, Rega has suffered no injury from any breach of contract, breach of the covenant of good faith and fair dealing, or unjust enrichment committed by Nationwide. Accordingly, he is not a class member and lacks standing to make claims on behalf of the proposed class.

### IV. Rule 23 Analysis

*A. Numerosity*

Rega claims that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1), but offers nothing more than that Nationwide "is one of the largest . . . insurers in the country . . . [and they have] had the same billing database system with the same flaws for more than 6 years." [Doc. 44 at 13.] Thus Rega suggests, the class satisfies Rule 23's numerosity requirement.

But Rega fails to show that a single other class member exists; a bald recitation of widely-available Nationwide business statistics does not satisfy Rega's burden. While "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations," *Gen. Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 330 (1980), the "party

Case No. 1:11-CV-1822
Gwin, J.

supporting the class cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impractical for numerosity purposes." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (quoting *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n. 4 (7th Cir. 1990). Here, Nationwide has presented evidence that no class members exist. [Doc. 46 at 17; 47 at 3.] Yet Rega fails to identify any other class members. Thus, the Court finds that Rega has not satisfied the numerosity requirement.

*B. Typicality*

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation and quotation marks omitted). Unique defenses applicable only to the representative plaintiff are capable of destroying typicality and may warrant the denial of class certification. *See Koos v. First National Bank of Peoria*, 496 F.2d 1162 (7th Cir. 1974) (upholding a district court's denial of class certification where the named plaintiffs were subject to unique defenses); *Rodriguez v. Dept. of Treasury*, 108 F.R.D. 360, 363 (D.D.C. 1985) (finding that plaintiff did not meet the typicality requirement of class certification where the defendant raised arguable defense unique to him).

Nationwide has unique defenses to Rega's claim and this defeats Rega's argument that his claims are typical. First, Rega sent his payment to the wrong address. [*Id.*] Yet Rega seeks to represent a broader class that includes people who sent their payments to the correct address. [Doc. 44 at 11.] Second, Rega made his payments late, yet he seeks to represent a class that made its payments on time. [Doc. 46 at 16.]

Because the class claims rise or fall with the claims of the class representative, courts must

Case No. 1:11-CV-1822
Gwin, J.

insure that the defendant does not have unique defenses to the claims of the class representative. A representative plaintiff should not be permitted to impose such a disadvantage on the class. *See Garonzik v. Shearson Hayden Stone*, 574 F.2d 1220, 1221 (5th Cir. 1978); *Zenith Laboratories, Inc. v. Carter Wallace, Inc.*, 530 F.2d 508, 512 (3rd Cir. 1976), *cert. denied*, 429 U.S. 828 (1976). The Court finds that Rega has not satisfied the typicality requirement.

C. *Adequacy*

Rule 23(a)(4) requires adequate representation and "serves to uncover conflicts of interest between the named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations and quotation marks omitted).

As noted, Plaintiff Rega has not shown that he is a member of the proposed class. Under Rule 23(a)(4), a representative who is not a member of the class cannot adequately represent its members and the action must be dismissed. *See Garrett v. City of Hamtramck*, 503 F.2d 1236, 1245 (6th Cir. 1974) (finding that "none of the plaintiffs is a member of the class affected by code enforcement and thus cannot act as representative of that class"); *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304 (8th Cir. 1978) (holding that a district court did not abuse its discretion when it refused to certify a class action because plaintiff was not a proper member of two of classes she sought to represent). Thus the Court finds that Rega is not an adequate representative of the proposed class because he has not shown he is a member of the class he seeks to represent.

Case No. 1:11-CV-1822
Gwin, J.

## V. Conclusion

For the foregoing reasons, Plaintiff Rega's motion for class certification is **DENIED**.

IT IS SO ORDERED.


Dated: October 22, 2012                    *s/     James S. Gwin*
                                                       JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE